IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:16-CV-67-H

| | | |
|---|---|---|
| OUTERBANKS VENTURES, INC., DEBTOR, RICHARD C. WILLIS, AND RICHARD A. BRINDLEY, Appellants, | ) ) ) ) ) ) | |
| v. | ) ) ) | **ORDER** |
| J. JEFFREY TINKHAM AND J. JEFFREY TINKHAM FAMILY TRUST, Appellees. | ) ) ) ) | |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

This matter is before the court on appeal from an order of the United States Bankruptcy Court for the Eastern District of North Carolina dismissing Debtor's Adversary Proceeding, No. 16-00009-5-SWH. The parties have thoroughly briefed the issue on appeal, and this matter is ripe for adjudication.

**BACKGROUND**

Procedural History

Outerbanks Ventures, Inc., ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 13, 2015. J. Jeffrey Tinkham ("Tinkham") and J. Jeffrey Tinkham Family Trust ("Trust") (Collectively, "Appellees") filed

a Proof of Claim against debtor in the amount of $902,716.79 on December 29, 2015. [DE #9-2 at 38-39 ¶29, 44 ¶73; #11-1 at 34-35]. Debtor filed a complaint in an adversary proceeding with Richard C. Willis ("Willis") and Richard A. Brindley ("Brindley") (Collectively, "Appellants") on February 9, 2016, and filed an amended complaint on March 21, 2016 to demand relief of a kind specified in Bankruptcy Rule 7001 and in objection to the claim of Tinkham under Bankruptcy Rule 3007(b). The amended complaint alleged six claims: (1) constructive fraud – 2011 transaction; (2) constructive fraud – 2013 transaction; (3) duress – 2013 transaction; (4) violation of N.C. Gen. Stat. § 84-13 Fraudulent Practice, Attorney Liable in Double Damages; (5) disallowance of claim and purported lien against property of estate; and (6) punitive damages.

In response to appellants' amended complaint, appellees filed a Motion to Dismiss on April 11, 2016, on the basis of, inter alia, a waiver included in the 2013 transaction and attached to the amended complaint. The bankruptcy court conducted a hearing on appellees' Motion to Dismiss on June 8, 2016, and entered an order on August 12, 2016, granting the motion, finding appellants had not sufficiently alleged duress to invalidate the waiver and noting the additional claims of the appellants were remedies and did not provide independent bases for relief in light of the dismissal of the substantive claims. [DE #1-1 at 13, 14 n.16].

Statement of Facts

Viewing the facts in the light most favorable to the appellants, the facts the appellants allege in the amended complaint are as follows. Appellants' contentions arise out of a series of transactions with appellees which began in 2009. An agreement was executed in 2009 ("2009 Agreement") between Tinkham, Willis, and Brindley. [DE #9-2 Ex. A at 47]. Debtor and Trust were not named in the 2009 Agreement. Id. This agreement provided Tinkham would pay to Brindley a contribution of up to $500,000.00 in exchange for a one-third (1/3) ownership interest to Tinkham "in the entity (or entities) that will own the Salvo, NC property (land, hotel, retail, marina, miniature golf, etc.)." Id. It also provided Tinkham "would become a one-third (1/3) owner in the entity (or entities) that will purchase Carolina Water's wastewater and water assets in Dare and Currituck Counties." Id. This 2009 Agreement permitted Tinkham to convert his ownership interest into a loan equal to his contribution by conveying it to Brindley and Willis, "[i]f the hotel financing is not procured in 2009 or if the Carolina Water transaction is not consummated in 2009." Id. There was no time specified as to when Tinkham would have to execute this conversion option. The anticipated transactions were not consummated in 2009. [DE #9-2 at 36 ¶15]. Tinkham did not exercise his option to convert his ownership interest into a loan at that time. Instead, he continued working

with Brindley and Willis toward the profits to be realized from a regional wastewater treatment operation in Currituck County's Southern Outer Banks. Id.

Appellants further allege in the amended complaint that prior to 2011 Tinkham occupied a superior bargaining position relative to the other partners because of his power and control over the books and records of the partnership (and related entities); his ability to cash out and obligate his fellow partners to repay his contribution and, his role as a legal advisor.[1] [Id. at 36 ¶16]. At all pertinent times to the amended complaint, Willis, on behalf of the Debtor, sought advice and assistance from Tinkham in matters pertinent to his profession as an attorney. [DE #9-2 at 37 ¶17]. Tinkham rendered valuable legal assistance to the Debtor in various matters, including but not limited to, the contract involving the Debtor's acquisition of property in Monteray Shores. Tinkham assisted in advising Debtor as to the terms and provisions of the financial documents when the Monteray Shores transaction closed on May 10, 2011. Tinkham was also intimately aware of the Debtor's financial condition, including its assets and liabilities; the terms of its obligations; what the Debtor was planning and why; what the objectives were and how they would be accomplished; the business contacts that Debtor had and wanted; and the business

---

[1] The 2009 Agreement, the validity of which is not contested, provided for the ability of Tinkham to cash out and obligate his fellow partners as a creditor. [DE #9-2 Ex. A. at 47].

4

strategies to protect and promote the interests of the Debtor, which Tinkham helped formulate. Id.

In the summer of 2011, Tinkham, Brindley, Willis, the Debtor, and the Richard A. Brindley Amended and Restated Revocable Trust executed a Credit Line Deed of Trust Note ("2011 Note"). [DE #9-2 at 37 ¶22; at 48 Ex. B]. The Debtor was added for the first time, as it had not appeared as a signatory on the 2009 Agreement. Appellants allege prior to the 2011 Note, Tinkham did not disclose that he had chosen not to exercise his right of conversion and failed to advise Brindley, Willis, or the Debtor, that they were no longer obligated to sign a note vouchsafing his contribution. [DE #9-2 at 37 ¶21]. This 2011 Note consolidated Tinkham's previous investment of $483,028.00 under the 2009 Agreement, two contributions of $50,000.00 each under separate loans, and established a $1,000,000.00 line of credit for the appellants. [DE #9-2 Ex. B at 48]. The maturity date for this 2011 Note, executed June 1, 2011, was December 31, 2011. [DE #9-2 Ex. B at 48, 50, Ex. C. at 52]. As security for the 2011 Note, the Debtor executed a Future Advances Deed of Trust encumbering certain real property, executed June 1, 2011. [DE #9-2 Ex. C at 51].

Appellants allege the business of the partnership continued with the same goal of removing the wastewater treatment facilities from Debtor's property and occupying the status of a utility or quasi-utility as permitted by the North Carolina Utilities

Commission to benefit from the construction of new facilities, the wastewater capacity, and receiving tap-on fees. [DE #9-2 at 38 ¶23]. Willis, on behalf of the Debtor and Brindley, discussed with Tinkham a plan to sell a portion of the Debtor's property. A release of collateral was then made by Tinkham upon request of appellants in 2012. [DE #9-2 at 38 ¶24; Ex. D at 56].

In the fall of 2013, the 2011 Note had matured and the appellants sought another release of collateral from Tinkham for the sale of property, Phase 12, owned by the Debtor. [DE #9-2 at 38 ¶25]. The appellants allege that Tinkham advised them to go forward with the 2013 sale, but that he later changed his mind and refused to cooperate, causing them to be threatened with a lawsuit by the potential buyer. [DE #9-2 at 38 ¶¶25-28]. Accordingly, the parties executed the First Amendment to Credit Line Deed of Trust Note and Deed of Trust ("2013 Note"). [DE #9-2 Ex. D at 56]. The 2013 Note restated the appellants' obligations under the 2011 Note and noted the 2011 Note was in default with outstanding principle advanced under the 2011 Note at $832,352.13 as of October 31, 2013. Id.

Under the terms of the 2013 Note, Patricia Brindley was added as a party undertaking liability. Id. at 57, 61. The 2013 Note restructured the 2011 Note to extend the maturity date from December 31, 2011 to December 31, 2015, released and substituted the collateral, and substituted Trust as holder of the Notes,

making the advance on behalf of Tinkham. Id. at 57. By the terms of the 2013 Note, the payment for the sale of Phase 12 would be made directly to Trust. Id. The appellants allege in the amended complaint that since 2012, Tinkham and Trust have received in excess of $900,000.00 in payments on the 2011 Note. [DE #9-2 at 38 ¶29]. The debtor filed a voluntary petition for relief under Chapter 11 bankruptcy on November 13, 2015.

On August 25, 2016, Debtor filed its notice of appeal of the bankruptcy court's order granting Tinkham and Trust's motion to dismiss the complaint and amended complaint under the adversary proceeding.

## COURT'S DISCUSSION

### I. Standard of Review

A district court has jurisdiction to hear appeals from a final order issued by a bankruptcy court. See 28 U.S.C. § 158(a)(1). In such appeals, the legal conclusions of the bankruptcy court are ordinarily reviewed de novo and the factual findings are reviewed for clear error. Goldman v. Capital City Mortgage Corp. (In re Nieves), 648 F.3d 232, 237 (4th Cir. 2011). A bankruptcy court reviewing a motion to dismiss should accept all well-pled factual allegations as true. See In re Caremerica, Inc., 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009). Therefore, "[o]n appeal from a bankruptcy proceeding, the court reviews an order granting a motion to dismiss for failure to state a claim de novo." Smith v. SunTrust

Bank, 554 B.R. 344, 349 (M.D.N.C. 2016) (citing Gerner v. Cty. Of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012)).

A federal district court confronted with a motion to dismiss for failure to state a claim should view the allegations of the complaint in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. F.B.I., 1 F.3d 255, 256 (4th Cir. 1993)). A Rule 12(b)(6) motion "'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). The intent of Rule 12(b)(6) is to test the sufficiency of a complaint. Id. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 546 (2007).

"[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Rule 8 of the Federal Rules of Civil Procedure provides "for simplicity in pleading that intends to give little more than notice to the defendant of the plaintiff's claims and that defers until after discovery any challenge to those claims insofar as

they rely on facts." Teachers' Retirement Sys. of LA v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007); See Fed. R. Civ. Pro. 8(a). A complaint is generally sufficient if its "'allegations are detailed and informative enough to enable the defendant to respond.'" Chao, 415 F.3d at 349 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil, § 1215 at 193 (3d ed. 2004)). Thus, a complaint satisfies the Rules if it gives "fair notice" of the claim and "the grounds upon which it rests." Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Twombly, 550 U.S. at 561-562).

## II. Analysis

The appellees moved to dismiss the amended complaint arguing the waiver in the 2013 transaction precluded all claims. Appellants do not contest the existence of the waiver as found in the 2013 amendment and attached to the amended complaint. [DE #9-2 Am. Compl. Ex. D at 58 ¶ 8]. Appellants argue the claim of duress in their amended complaint would invalidate the waiver. However, the bankruptcy court found appellants had failed to plausibly allege the existence of duress. [DE #1-1 at 13]. In light of this, the bankruptcy court granted the motion to dismiss noting the appellants "ha[d] not stated a viable defense to enforcement of the waiver provision contained within the 2013

Note," and thus the waiver was enforceable and operated as a bar to appellants' claims in their entirety. [DE #1-1 at 13-14].

While a valid waiver would preclude the appellants' claims for relief, a plausibly alleged claim of duress would prevent application of the waiver at the current stage of litigation. A waiver is enforceable unless it "was [1] obtained through intentional misconduct; . . . [2] was not knowing and voluntary; . . . or [3] would thwart the legislative policy which [the statute] was designed to effectuate." Ballard v. Bank of America, N.A., 734 F.3d 308, 313 (4th Cir. 2013) (citing Wartsila NSD N. America, Inc. v. Hill Int'l, Inc., 530 F.3d 269, 274 (3d Cir. 2008); Eaglehead Corp. v. Cambridge Capital Grp., Inc., 170 F.Supp.2d 552, 559 n. 7 (D. Md. 2001); Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n. 15 (1974); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704 (1945)). Thus, at the motion to dismiss stage, this court must consider whether the claim of duress was sufficiently pled in the amended complaint.

To state a claim for duress under North Carolina law, a party must show the following:

> (1) a threatened breach that the promised performance will not be received and that breach will result in irreparable injury; (2) the threat is effective because of economic power not derived from the contract itself; (3) the threatened party could not enter into a contract with a third party replacing the threatening party, i.e., the party could not obtain the "goods" from another source of supply; and (4) there is no immediate legal remedy available.

G.E.B., Inc. v. QVC, Inc., 129 F.Supp. 2d 856, 861 (M.D.N.C. 2000) (citing Rose v. Vulcan Materials Co., 194 S.E.2d 521, 536-37 (1973). A wrongful or illegal act is a crucial component of duress. "Illegality is the foundation on which a claim of coercion or duress must exist." Bell Bakeries, Inc. v. Jefferson Standard Life Ins. Co., 96 S.E.2d 408, 419 (N.C. 1957). Furthermore, "[a] threat to do what one has a legal right to do cannot constitute duress." Bell Bakeries, 96 S.E.2d at 419 (quoting Kirby v. Reynolds, 193 S.E. 412, 419 (N.C. 1937)). Duress will also not be found if "some factor other than the wrongful act of which plaintiffs complain motivated them to enter into [the agreement.]" Housing, Inc. v. Weaver, 246 S.E.2d 219, 225 (N.C. App. 1978), aff'd per curiam, 251 S.E.2d 457 (N.C. 1979).

    a.   Threatened Breach that the Promised Performance Will Not Be Received and That Breach Will Result in Irreparable Injury

The bankruptcy court found the appellants' allegation that Tinkham advised Willis to go forward with the 2013 sale, but then refused to cooperate by releasing his security interest, does not by itself indicate any wrongdoing or breach of duty by Tinkham. Specifically, the bankruptcy court wrote "[a]bsent from the Amended Complaint is any allegation that Tinkham agreed to release his security interest or that he had an obligation to do so." [DE #1-1 at 9-10]. Further, the court concluded, "[i]n the absence of a duty or obligation to facilitate the sale, it could not have

been wrongful or unlawful for Tinkham to refuse to release his security interest." Id. at 10.

Contrary to the bankruptcy court's conclusions, viewing the facts in the light most favorable to the appellants, appellants allege Tinkham had agreed to release his security interest in the 2013 sale and had an obligation to do so. See Amended Complaint [DE #9-2 at 40-41 ¶¶41,49]. The allegations specifically provide

> Tinkham did this at a time when he had assured all [appellants], including particularly [the Debtor,] of his cooperation in the orderly sale of Phase 12 by [the Debtor] and the release of his security interest in the sale, even though that security interest was voidable since he had violated his fiduciary duties as aforesaid.

[DE #9-2 at 41 ¶49]. Appellants allege Tinkham's duty to release the property as a partner, "[u]ntil December of 2013, Tinkham remained a partner with Willis and Brindley. As such, he continued to owe them a duty of utmost good faith and integrity in his dealings with his partners, who had maintained trust and confidence in him as a partner and legal advisor." [DE #9-2 at 40 ¶41].

Appellants allege irreparable injury occurred because the Debtor was forced to file for bankruptcy as a result of the 2013 Note. [DE #9-2 at 44 ¶70]. Appellants allege in the amended complaint that appellees extracted more than $900,000 from the Debtor; that appellees have received in excess of $900,000 in payments on the 2011 Note; and that "the 2011 Note included at least $700,000 in prior debt for which [the Debtor] had no prior

responsibility to pay and for which [the Debtor] received no benefit. [DE #9-2 at 38 ¶29, at 39 ¶35, at 43 ¶63, at 44 ¶69]. The bankruptcy court found there was no irreparable injury alleged because "[t]he factual allegations in this case are a far cry from those which courts have found sufficient to state a claim for or constitute duress." [DE #1-1 at 11]. Most notable regarding irreparable injury is the following allegation, "[t]he fraud practiced by Tinkham herein described crippled his client, [the Debtor], preventing it from conducting business in a normal fashion and making use of all funds generated from the sale of its assets, eventually causing [the Debtor] to file the current Chapter 11 bankruptcy proceeding." [DE #9-2 at 44 ¶70].

This court finds the allegations of the amended complaint are quite similar to the facts of the cases cited by the bankruptcy court. [DE #9-2 at 38-44 ¶¶28,42,47,48,52,54,69,70]. See Fallston Finishing, Inc. v. First Union Ntl Bank, 333 S.E.2d 321, 329-330 (N.C. App. 1985), (trial court erred in refusing to submit issue of economic duress to jury; plaintiffs had two options: enter agreement, or watch four companies collapse); Weaver, 246 S.E.2d at 227 (court found duress where plaintiffs had two options: enter an agreement or lose the entire project); and Rose v. Materials Co., 194 S.E.2d 521, 536 (N.C. 1973) (duress found where plaintiff's options were to cede to defendant's demands or go out of business). Appellants allege in the amended complaint, "At the

time [Tinkham switched from partner to creditor in late fall 2013], he had already obtained a stranglehold on [the Debtor's] property, making it impossible for his partners and [the Debtor] to transact necessary business without meeting his demands." [DE #9-2 at 40 ¶42]. Appellants also allege irreparable injury occurred because the Debtor was forced to file for bankruptcy as a result of the 2013 Note. [DE #9-2 at 44, ¶70]. Therefore, this court finds appellants have plausibly alleged irreparable injury.

    b.   <u>Threat is Effective Because of Economic Power Not Derived from the Contract Itself</u>

Appellants contend any "legal rights" or "contractual rights" of Tinkham regarding the Debtor had been unlawfully obtained in the 2011 transaction because of Tinkham's role as a partner and legal advisor at the time.[2] [DE #16 at 13]. Appellants allege in the amended complaint,

> Tinkham took advantage of [the Debtor] and unjustly enriched himself by procuring the 2011 Note and 2011 Deed of Trust from [the Debtor] during the time that an attorney-client relationship existed between [the Debtor] and himself. As a result of such acts, Tinkham thereby gained [the Debtor] as an additional signatory on the 2011 Note, when [the Debtor] otherwise had no obligation to pay him money, and he gained a security interest in valuable North Carolina property owned by [the Debtor] to which he was not otherwise entitled.

---

[2] While Tinkham became a creditor in the execution of the 2011 Note, the amended complaint alleges the 2009 Agreement conversion option of Tinkham's ownership interest was not made explicitly until December 2013. [DE #9-2 at 37 ¶20].

[DE #9-2 at 44 ¶68]. Tinkham was a family member, friend, and had served as a legal advisor, and appellants allege his breach of fiduciary duty and "his threats communicated to [appellants] in the fall of 2013 led to the execution of the 2013 note amendment and transaction benefitting Tinkham and the Tinkham Family Trust as aforesaid." [DE #9-2 at 36 ¶16, 41 ¶47].

The court notes the bankruptcy court found Tinkham's role as legal advisor provided power legitimately granted to him as a result of "the parties' voluntary dealings." [DE #1-1 at 10]. The allegations in the complaint illustrate the trust reposed in Tinkham by Willis, Brindley, and the Debtor and the way in which that trust was mistreated. [DE #9-2 at 36-37 ¶¶16-19]. However, Tinkham's role as an attorney is a source other than "the contract itself."

While the economic power to convert from a partner to creditor was provided explicitly in the 2009 Agreement, [DE #9-2 Ex. A at 47 ¶3], appellants have sufficiently alleged Tinkham obtained additional economic power that was not derived from the 2009 contract itself. Appellants have thus made allegations sufficient to give "fair notice" of the claim and "the grounds upon which it rests." Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Twombly, 550 U.S. at 561-562).

  c. <u>Threatened Party Could Not Enter into a Contract with a Third Party Replacing the Threatening Party</u>

As creditor under the 2011 Note, Tinkham was the sole person who controlled the sale of the property for Phase 12 in December 2013. [DE #9-2 at 41 ¶48, at 44 ¶69]. Appellants allege in the amended complaint, "[t]he fraud practiced by Tinkham herein described created a lien upon [the Debtor's] property, making it impossible for [the Debtor] to sell the secured property without a release or satisfaction thereof." [DE #9-2 at 44 ¶69]. Thus, appellants have alleged Debtor, Willis, and Brindley would not have been able to enter the 2013 sale of property without Tinkham's consent.

  d. <u>No Immediate Legal Remedy Available</u>

There is no dispute between the parties as to the lack of an immediate legal remedy available.

Therefore, for the reasons stated above, appellants have sufficiently alleged a claim for duress, which overcomes application of the waiver as a matter of law at this stage of the litigation. The court hereby REVERSES the order of the bankruptcy court dismissing claims one, two, and three.

Whether the claim will bear out in favor of the appellants is yet to be seen, but at the Rule 12(b)(6) motion to dismiss stage, it is not for the court to "resolve contests surrounding the facts,

the merits of a claims, or the applicability of defenses." Edwards, 178 F.3d at 243.

### III. Claims Four, Five, and Six

The court disagrees with the bankruptcy court that claim four was simply a remedy and not an independent basis for relief. Claim four under N.C. Gen. Stat. § 84-13 asserts fraudulent practice by an attorney as well as attorney liability in double damages for such practice. The court agrees with the bankruptcy court that claims five and six were remedies and not independent bases for relief, however as claims one, two, and three, are not definitively barred by the waiver at this stage of the litigation, the court REVERSES the order of the bankruptcy court dismissing claims four, five, and six.

### CONCLUSION

For the foregoing reasons, the order of the bankruptcy court dismissing appellants' amended complaint, [DE #1-1], is hereby REVERSED as to all claims. This matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.

This 29th day of September 2017.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#35